Thank you, Your Honor. Gaston Bepi, appearing on behalf of the appellants. There are two issues, two main issues in this case. The first one deals with the summary judgment motion that was granted when the former Dr. Saks was incarcerated at Lompoc. Granted his opposition, the opposition that emanated from Lompoc was probably not the best piece of legal writing, but under the circumstances I think it was sufficient, especially combined with his oral argument, to create a triable issue of fact as to the willfulness of his conduct. And at the oral argument, then Dr. Saks explained that he didn't have the contract from 1982. We were talking about events that occurred in 2007. Well, you mentioned the contract of 82. What contract governs this? Is it 82 or 87? No, in 1987 his contract was, well, both. I would say both. How can they both be? I thought one superseded the other. Well, I'm not sure they did supersede the other, but I don't think it really makes a whole lot of difference. Are the payments that issue due under the 87 contract? Yes. Okay. So it sounds like the 87 contract, to the extent a contract governs, does govern. Okay. Okay. Well, I mean, I'm asking you. I agree. It does govern. That was my question. Okay. So the point is whether or not there was sufficient evidence to eliminate the triable issue of fact as to Dr. Saks' intent. The court held that his failure to report various activities that are rather unsavory. Was he obligated under the 87 contract to do the reporting? I believe he was. Yeah. But the court found that his 1990 conviction basically constituted the breach of contract and everything thereafter was damages to the respondents. So any way you slice it, we do need to go back to that early date of 1990. Well, from that point forward, then the question becomes, on the quantum Merowith theory, whether or not the unclean hands doctrine was sufficient to bar him from presenting his quantum Merowith case. Is it disputed that after 1990, when by the operation of the 1987 contract, he's no longer entitled to payments, that is to say it's an automatic breach, is it disputed that he received something on the order of a million dollars that he was not entitled to? Well, it depends. If you go under quantum Merowith, we would dispute that he's not entitled to the money. No, I'm asking under the contract, was he entitled to that money? The court held that he breached the contract and therefore the money had to be returned. And I'm asking you, do you dispute that? We did not appeal that issue. Okay. The only issue we appealed was the quantum Merowith issue. Okay, so I start out then as I analyze clean hands, that he took roughly a million dollars to which he was not entitled. Well, again, he did the work. He and his associates did the work. So if we weigh equities, which we're supposed to do under the unclean hands, you know, the main issue is whether he willfully engaged in unclean hands. He did the work. He felt he was entitled to it. I think that defeats the willfulness requirement for unclean hands. Counsel, Judge Gould with a question for you, please. Good morning, Your Honor. Did he raise in the district court the point you're arguing now about the need for willfulness? He did in a roundabout way, not being an attorney. At the oral argument, he explained to the court that when he was asked why he did not report these activities, he stated, I did not send them any letters because I did not have the contract from 82, and the events happened 10, 20, 25 years later. And then he went on to say that everybody knew about the events and didn't really know that it was his obligation to do so. I think that goes directly to the willful element. Okay, thank you. You're welcome. Counsel, let me follow up on Judge Gould's question. If we determine that he did not raise that argument adequately at the lower court level, hasn't that argument, therefore, been waived unless one of the exceptions applies to waiver? And if it has been waived, can you tell us which exception you think would apply? Well, for one thing, it's a question of law. And the argument has been fully briefed by respondents. So there's no prejudice to them. I would argue that there is no prejudice. The argument has been fully briefed. What more does the court need to rule on it? That would be my position. All right, thank you. And the second part of the appeal deals with Madison Park, which was Dr. Sacks' surgery center. That entity hired and employed several other physicians besides Dr. Sacks, including nurses that provided services to the ILWU recipients. And, again, the problem that Dr. Sacks had was the problem faced by, I would say, everyone who was in pro se and in a federal penitentiary at the same time. He could not get counsel. He had other cases going on. He had had two counsel. He did. He did. So he was able to get counsel. He just was unable or unwilling to pay them, or he was unwilling to get along with them. Well, I think the real reason was payment, Your Honor. It was very clear that it was payment, yeah. Right. And you have to look at the situation that he was in. Not only was he paying lawyers for this case, but he was also paying lawyers for his divorce, which was very expensive, and also his criminal defense attorneys. So he wasn't in the very best financial condition, and being in a penitentiary, he wasn't able to earn a whole lot of money either. So basically what he had to do was he had to plug through all these problems, which he did. And when he was able to get sort of on his feet so that he could retain counsel, meet with counsel, and explain to counsel all the ramifications of the case, he did so. And basically it appears that the great liberality that is to be afforded in setting aside default judgments wasn't applied in this case. Was he the sole owner of this surgery center? He owned over 90%. But there was, I believe there was at least one other owner. And the other owner didn't want to pay for counsel? The other owner was his wife, and she was suing him. So they were not, you know, at an amicable stage at that point. And certainly weren't working together. Counsel, what's the standard of review that applies to a decision not to overturn a default by the district court? Well, it's discretionary. It's an abuse of discretion. It's an abuse of discretion. I understand that's a high threshold. But I think on the record, in this case, especially given the fact that he was incarcerated and the issue was never really presented, for example, citing the cases that some liberality must be afforded to inmates when they're trying to do this in pro se, I think an abuse of discretion can be met in this case. Now, if we were to affirm the quantum merit part of the judgment, the part we talked about earlier, and if we were to set aside the default with respect to the surgery center, I assume the surgery center really has nothing more than its own quantum merit claim. Is that right? Correct. Yeah. So I'm not sure how much good it's going to do you if you've lost the quantum merit in the first instance and the only claim that the surgery center has is quantum merit. Well, I guess we would have to brief the issue of how much of Dr. Sachs' inaction can be attributed to a separate entity. Right. Got it. Unless there are any more questions, I'd like to reserve. Good. So you've got a little under six minutes to reserve. Okay. Thank you. Yeah. Good morning, Your Honors. May it please the Court. Kevin Lissinsky on behalf of the appellees. And with me is my co-counsel, Andrew Giaia. Okay. Are you both going to argue or just one? No, I'll be arguing solely, Your Honor. Okay. This case is primarily about equity. And by that, what I mean is as the United States Supreme Court has held in the precision case cited in our brief, the court should not become in a better of inequity. And by that, I'm referring to the unclean hands doctrine in particular. We believe that the record is clear that the district court applied the appropriate legal standard in deciding that the unclean hands doctrine barred the claims for quantum merit. Here's my hesitation about the unclean hands position, and it goes directly to this question of equity. I'll assume that the number's right, although I understand there's some imprecision to it, that Dr. Sachs billed roughly a million dollars, maybe more, maybe less, when he was not entitled under the contract to have any of it. He's claiming that he and his surgery center performed about $5 million worth of work. I'll take that number as a given for the purpose of the question, although I do note that it's $5 million and change for about 107 clients, which works out to quite a bit of money per client. But I'll take the $5 million as the right number for now. Why is it fair for your client to have received $5 million worth of work and not paid for it? That doesn't seem fair to me. There is absolutely no evidence in the record that they did, Your Honor. Did what? There's no admissible evidence in the record that our clients received any of the supposed services that are alleged in the complaint. Well, why is that not in the record? It's because we didn't get very far, right? That is to say, this was dismissed on quantum error grounds without getting into the proof. No, Your Honor. It was argued on our motion for summary judgment on the breach of contract. The claims that were brought, and they were brought together in the complaint, Dr. Sacks and Madison Park alleged that they together had claims of $5 plus million. When we filed our motion for summary judgment in the original case on the claims by Dr. Sacks and Madison Park, our motion was as to both of them. We stated very clearly what our position was and that there was no evidence in the record. After we had gone through much discovery, there was no evidence in the record of services having been provided. In response, there was a declaration by Dr. Sacks and there was no evidence attached to the declaration whatsoever. There was a lot of hearsay, there was a lot of hyperbole, things that were not anywhere in the record, and there were evidentiary rulings made on the declaration submitted by Dr. Sacks. The district court sustained our objections to the statements that were made in Dr. Sacks' declaration, supposedly providing the evidence of this $5 million. The evidence was so flimsy, there were no documents, there was nothing documenting this alleged $5 million of services provided, and that sustaining of our objections was not appealed. So that is not before the court. If that were an argument to be made, that argument has not been made before this court. Well, putting to one side the $5 million, assume that there has been some work done. Were you able to get rid of any evidence as to any work being done on behalf of your client? There is no evidence in the record of any work being done. Let me ask it a slightly different way. If Quantum Marrow had not been the ground for dismissal, and the case had gone forward so that Quantum Marrow recovery was to be allowed, at least in principle, was there no way at that stage for any evidence to be introduced for any work having been done for which no compensation had been paid? I believe that is correct, Your Honor. There is no evidence in the record that would have supported that claim. Now, have you made that argument to us? Yes, that is in our briefs. Another thing I wanted to point out, Your Honor... But I want to keep pursuing this. Sure. On the assumption that we disagree with some of those aspects, and on the assumption that it is open to us to think that the case may be... If we set aside the Quantum Marrow, that there is a possibility for some recovery for some work, and I understand that you are going to dispute that, but on that assumption, is it fair for your client to have received work for which it has not been paid? For which the doctor was not paid. First of all, you have to look at the facts of the case. First of all, our client did not receive the work. It was the longshoremen and their dependents who received any work if there was any done whatsoever. But the evidence is that this was a fraudulent scheme. It was a fraudulent operation. Oh, there is lots of fraud in this case. I got that. But I'm trying to work at this Quantum Marrow principle, and you keep deflecting me. And I understand why you're deflecting me, but I'd like you to answer the question. Yes, Your Honor. Assume for the moment that Dr. Sachs and Madison Park did perform some work for your clients, for the women, for the children, for the men, et cetera, for which they have not been paid. Is it fair for their payment not to be made? Yes, it is, Your Honor. Okay, why? Because they should have notified us. We never would have been sending any patients to Dr. Sachs or to Madison Park if we had known that he had essentially caused the death of patients on the operating table. He was operating without any medical malpractice insurance since 2004. We weren't informed of that. If we had known that, there's no way we would have sent any patients to him. Also, he had stipulated to the disciplinary order in 2003, which stated that, or the charges were brought in 2003. He stipulated to that in 2006 that he had committed gross negligence, that he had committed fraud with respect to submitting insurance claims for medical services provided. All of this was kept secret from us. I'm having a little trouble with this. Having spent 35 years representing health care providers before I went on the bench, understanding the reporting requirements they have, I can't understand how it is that your client was completely unaware of this doctor's conduct and his disciplinary problems and everything else. Did they not require him to periodically update his information and disclose things? They required him on the forms that he sent to certify that everything was accurate. He just didn't disclose? He didn't disclose. Did he misrepresent or did he just keep his mouth shut? No, he clearly misrepresented. If we had known this, we never would have sent patients. It's not fair to charge us for these services during a period of time in which he clearly should not have been working on patients. Were there any patient complaints that were made? There were patient complaints made. That's what led us to initiate a fraud investigation. We initiated the fraud investigation before we learned of all the wrongdoings of Dr. Sachs. We learned of the wrongdoings once the complaint was failed. We thought it was the ultimate chutzpah for Dr. Sachs. Once his medical license had been completely revoked and once he had been indicted on the new criminal charges alleging the fraud in connection with his medical practice to then sue the plan. The plan is an ERISA plan providing services for the longshoremen and their dependents on the West Coast. Do you think we should decide this case based on the waiver argument that Dr. Sachs is now advancing an argument he didn't raise with the lower court or do you think it would be better for us to address head-on the merits of his claim? I believe the waiver argument is strong, Your Honor, and I believe that that alone would provide a sufficient reason to affirm the judgment below. But even if you did not find that there had been waiver and if you did take on the argument of unclean hands, we believe the overwhelming evidence in the record as well as the well-reasoned opinion by the district court supports the finding of the district court that the Quantum Marowit claim should not stand and that there were unclean hands. Even if you didn't apply unclean hands, as we cite in our brief, there's no evidence in the record that there had been any enrichment, that there had been any services provided, nor that they were provided unjustly. Did the lower court judge address all of the three prongs of the unclean hands analysis in his decision? No, Your Honor. With respect to the unclean hands argument, I know that he addressed the nature of the misconduct prong. I don't think he addressed the other two prongs at all. And so then the question is, if the lower court didn't address those issues, can we address them here? The court did address the question of whether we would suffer prejudice. With respect to the unclean hands doctrine, also the question was raised of whether or not there was a direct relationship between the unclean hands and the claim that's made. And we believe that the relationship is direct in that it was not only a breach of contract, but it was an intentional part on Dr. Sacks, part not to inform us of these wrongdoings, and thereby continue to get paid, knowing that he had no malpractice insurance, knowing that he had all these disciplinary suspensions and revocations, and knowing that we would never be sending any patients his way. It was directly related that he was failing to provide this information to us, and that caused us to basically pay the bills that were being sent to us. Counsel, Judge Gould, if I could interject a question for you. Although I think there's a strong waiver argument, I'd like to focus on the merits of the quantum merit claim. So in my experience, this has normally been a doctrine under which someone without a contract claim can recover for the benefit that was received by the party they're suing. So I have a rather technical question. Is it correct to say that given the evidentiary rulings of the district court that were not received, or that were not appealed, that the record as it stands before us does not indicate that there's any benefit received by your client? Yes, Judge. And you hit on a point that is, I think, critical, in that quantum merit is usually found to be disfavored and not applied when you do have a contract governing the relationship of the parties. Here the contract had been breached, and so they're trying to use this as an alternative theory. And the quantum merit claim has no legal basis, because the determination by the district court that there had been a breach and that there should have been no monies paid, I believe, controls the question of whether or not there had been any benefit conferred. And as the district court found that there was no benefit conferred, and also there was certainly no unjust benefit conferred based on the facts and based on the rulings of the district court. Okay, thank you. Thank you. I think you just lost me in providing that answer. It's, I think, standard black-letter law that if the contract doesn't govern because it has been breached, even a breaching party who has conferred benefit, perhaps thinking that the contract was still in effect or maybe realizing that it was not in effect, quantum merit is then the alternative remedy. I mean, that's just black-letter law. So the fact that Dr. Sachs might have breached the contract does not automatically foreclose the quantum merit recovery. Are you with me so far? I am with you, Your Honor. Then I have a problem with your talk about all these evidentiary rulings, that there's no showing that any work was ever performed, but you kept saying as you elaborated your answer about Dr. Sachs not having reported his various convictions and no and malpractice insurance, all of those things, which, of course, I'm very sympathetic with your client. You keep talking about, well, we never would have sent him patients. Well, you're just telling me that you sent him patients. So he didn't do any work on the patients? No, we received bills, Your Honor. There's no evidence in the record of actual work being performed. When our investigators investigated Dr. Sachs, what they found was that he was performing cosmetic surgery, getting paid by individuals, and then submitting bills for services that were not even performed. We don't pay for cosmetic surgery under our plan. That's what he was performing, and then he was sending us bills for non-cosmetic surgery, for things that were supposedly medically necessary. So you don't contest the fact that you were sending patients, but you're saying that there's no evidence in the record in its current state that any of the work for which he billed was compensable. That's correct. You know, these sound like questions of fact to me, not to be disposed of in a summary ruling. I mean, all of these issues of whether he was performing work or not performing work, whether the bills were reasonable for the work performed, these sound like questions of fact to me. Your Honor, respectfully, these were questions that were dealt with during the discovery phase. Once we completed that and got to the summary judgment phase, it was presented in our motion for summary judgment that there was no evidence to support any finding of any compensable services being performed, and there was nothing provided in opposition. So there is no question of fact. If there was any question, it would have been, well, would Dr. Sachs' declaration that says I performed services be enough? And the district court ruled that it wasn't, sustained our objections, and that was not appealed. The ruling by the district court on our objections was not appealed. So you're saying there's no genuine issue of material fact on the issue of whether there was compensable work done for which you benefited? That's correct, Your Honor. Can I just ask one quick question? What was the court's basis for not setting aside the default? Was it because you need to have a lawyer when you've got an entity as a party? They can't proceed pro se. That's correct, Your Honor. There is a rule in the Ninth Circuit, and it's adhered to quite strictly in the district court, and it was also because it was a finding of culpable activity on the part of Dr. Sachs that caused the extremely long delay, which also caused us prejudice. All right. Thank you. Okay, thank you. You've saved some time. Thank you, Your Honor. First of all, on the issue of all these claim forms that were sent in, they're not part of the record that were allegedly sent in. I don't know what the claim form says, but if it's not part of the record, I can't really address it. Second, as far as the evidence of the quantum merit, there were two motions for summary judgment. At the first motion for summary judgment, the breach of contract claims of Dr. Sachs were dismissed by the court. However, the court left open the quantum merit, and left it open on the basis that Dr. Sachs alleged that the services that he performed were reasonable and necessary. So there was some evidence before the district court that Dr. Sachs did provide services. The second summary judgment motion was basically trying to salvage what was left from the first summary judgment motion, which was basically nothing. However, the court did make that finding in its order, and it's ruling on the first summary judgment motion. The real gist of the case was whether or not the unclean hands doctrine should have applied to Dr. Sachs' quantum merit claims, as well as some of his defenses as to latches going back to 1990 on some of these claims that the respondents have obtained a judgment on. And also, back on the issue of whether or not there exists proof of this, what I've heard Mr. Lozinski say is that they disagree that the claims that Dr. Sachs submitted were covered. They're claiming that they were cosmetic, and Dr. Sachs claims they were not. They were medically necessary. There are 50 boxes, as Dr. Sachs pointed out in his oral argument at the time of the first summary judgment motion, of documents. So there's a lot of work that needs to be done in this case that hasn't been done as far as the quantum merit. Mr. Beebe, does your client concede that he failed to comply with the notice provision in his contract regarding all of his various disciplinary problems? It looked to me like your argument there is that – well, your argument is twofold. Number one, that he didn't comply with the contract. But number two, that International Longshore and Warehouse Union should have known they were in effect on – had constructive notice of his problems. That was his argument at the summary judgment motion, which was denied or not accepted by the district court. I mean, it's pretty – the contract's pretty clear what he needs to do. And I gather he concedes that he didn't comply with the contract and give notice. Well, he stated in open court to the court that he no longer had a copy of the contract and that he didn't know they needed to do that. So I'm not going to sit here and say that, you know, we gave notice. Well, as you read it, he conceded in open court he didn't have a copy of the 82 contract. Right. It sounds to me as though it's the 87 contract that governs. Well, I'm not sure he knew the difference between the contracts. Yeah, right. But in any event, there's a contract that requires notice. He doesn't give notice. He doesn't read the contract or he doesn't know about the contract and therefore doesn't read it. But in any event, no notice. Or he intentionally withheld that information. Or it's sloppy practice. It sounds like a question of fact. I don't know how on top of the insurance requirements Dr. Sachs were. Well, if the contract includes a notice provision and he didn't give notice, to me that doesn't sound like a question of fact. I mean, he may have reasons why he didn't give notice, but if the contract's clear, he's got to give notice. If he doesn't, he breached the contract. I think you can decide that as a matter of law, can't you? Yeah, and the issue is not really whether or not the court was incorrect in the breach of contract analysis. The issue is whether it was incorrect in the quantum merit analysis. But I have trouble with the obligation to give notice is triggered at a minimum by his criminal behavior. And for him to say that it's somehow unfair to require him to record, to report in accordance with the requirement of the contract, criminal behavior in which he's not engaged, that's a tough argument for you to make. Well, representing Dr. Sachs, as you can imagine, is not the easiest chore. But the criminal, remember one thing, in 2007 he received a letter from the union saying, you're no longer a preferred provider, and he stopped submitting claims after that. The criminal conduct, the most severe criminal conduct that I think the court is referring to, occurred thereafter. Oh, no, he's got his tax evasion criminal proceeding. He does. He had a 1990 tax evasion criminal proceeding. His license was suspended for a short period of time, and he went back to practice on that one. But, you know. Okay, we got it. Okay, thank you. Thank both sides for their arguments. Sachs v. ILWU Pacific Maritime Association benefit plans submitted for decision, and we'll take a five-minute recess.
judges: W. Fletcher, Gould, Christensen